IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **DONALD MUIR, SR.** | * |
| **Plaintiff,** | * |
| v. | * Civil Case No.: SAG-21-01794 |
| **METRO AUTO SALES, INC., et al.** | * |
| **Defendants.** | * |

## MEMORANDUM OPINION

Plaintiff Donald Muir Sr. ("Plaintiff") brings this action against Defendants Metro Auto Sales, Inc. ("Metro"), Amir Mashaqbeh ("Mashaqbeh") D/B/A Jordan Towing, Inc. ("Jordan Towing"), and Saed Qatawneh ("Qatawneh") for personal injuries Plaintiff sustained in a motor vehicle accident. Plaintiff asserts a state common law claim for negligence, alleging failure to yield, failure to keep proper lookout, failure to stop, failure to exercise due caution, and failure to properly control the vehicle. ECF 3. Metro has filed a motion for summary judgment, ECF 27, which Plaintiff opposed, ECF 28. Mashaqbeh D/B/A Jordan Towing and Qatawneh (collectively, "Jordan Towing") also responded in opposition to the motion, ECF 31, and Metro then filed a reply, ECF 34. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, Metro's motion will be granted.

I. **BACKGROUND**

The following facts are construed in the light most favorable to Plaintiff and Jordan Towing Defendants, the non-moving parties. Metro asserts, and Plaintiff and Jordan Towing do not dispute, that Metro orally contracted with Jordan Towing "to undertake transport services for vehicles

Metro Auto bought from Bel Air Auto Auction to [its] dealership in Pennsylvania." ECF 27-2 (Metro Aff.) 1:4. In June of 2018, the same month as the accident, Jordan Towing, through Mashaqbeh, hired Qatawneh as a driver to tow cars. ECF 27-1 (Qatawneh Dep.) 48:4–16. On June 21, 2018, Mashaqbeh and Qatawneh traveled to Bel Air Auto Auction to transport vehicles that Metro purchased from the auction to Metro's dealership in Pennsylvania. ECF 31-1 (Metro's Resp. to Pl.'s Interrog.) 2:9. At the time, Mashaqbeh was still training Qatawneh on how to load cars onto the tow vehicles and transport them to their ultimate destinations. ECF 28-4 (Qataneh Dep.) 15:49– 50. Qatawneh was instructed by Mashaqbeh to drive the car owned by Metro from the auction lot to meet the towing truck. *Id.* at 15:49, 16:54. In doing so, Qatawneh hit Plaintiff, who worked as a security guard, when Qatawneh failed to stop at a stop sign posted near the security gates. ECF 3 at 1:4. Plaintiff suffered personal injuries as a result of the accident*. Id.* at 2:5.

Jordan Towing alleges that Metro directed them to provide paperwork at the security checkpoint giving Jordan Towing permission to drive Metro's vehicle off the lot. ECF 31 at 2. Jordan Towing also alleges that Metro instructed them to arrive at the Bel Air Auto Auction lot during business hours. *Id.* However, in his deposition, Qatawneh stated that Mashaqbeh was the only person to give him orders regarding his work on the day of the accident. ECF 34-1 at 5. Specifically, Qatawneh stated that "Jordan Towing told [him] to drive the car to the outside so it could be towed for transportation" and that he "[does] not know Metro." ECF 28-4 at 18:62. Metro also denies knowing or employing Qatawneh. ECF 31-1 at 2:9.

II.  **LEGAL STANDARDS**

Rule 56(a) of the Federal Rules of Civil Procedure states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party

bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011). If the moving party establishes that there is no evidence to support the non-movant's case, the burden then shifts to the non-movant to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-movant must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; rather, there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349.

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. The non-movant "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). If the non-movant fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Casey*, 823 F. Supp. 2d at 348–49. In ruling on a motion for summary judgment, a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III. DISCUSSION

The parties agree that Metro was not present at the auction and did not play a direct role in the accident. Instead, the parties' primary dispute is whether an agency relationship exists between

Metro and Qatawneh, such that Metro could be vicariously liable for Qatawneh's negligence. Metro argues that no agency relationship exists. ECF 34 at 3. Alternatively, Metro asserts that if an agency relationship could be established, Qatawneh and Jordan Towing were independent contractors and Metro exercised insufficient control to confer liability. *Id.* at 5–7. In contrast, Plaintiff and Jordan Towing Defendants contend that an agency relationship—specifically, a master-servant relationship—existed because Metro maintained sufficient control over Qatawneh. ECF 31 at 3; ECF 28 at 4. Therefore, Plaintiff and Jordan Towing Defendants argue that Metro is vicariously liable for the accident. *Id.*

An agency relationship is defined as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Green v. H&R Block, Inc.*, 735 A.2d 1039, 1047 (Md. 1999) (quoting Restatement (Second) of Agency § 1 (1958)). Maryland courts have frequently considered three characteristics in determining whether a principal-agent relationship exists: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Id.* at 1048. Here, the parties focus on the third factor – the extent of control exercised by the principal over the agent.

If a principal-agent relationship is found to exist, an agent may be considered either an employee/servant of the principal, or, alternatively, an independent contractor of the principal. Restatement (Second) of Agency § 2 (1958). The difference in characterization depends on the degree of the principal's control over the agent. Restatement (Second) of Agency § 220(2)(a) (1958). Generally, Maryland law protects principals from liability for the tortious acts of their independent contractors and the employees of their independent contractors. *See Rowley v. Mayor*

4

*& City Council of Balt.*, 505 A.2d 494, 496 (Md. 1986) (citing to Restatement (Second) of Torts § 409 (1965)) (providing that "[t]he general rule is that the employer of an independent contractor is not liable for the negligence of the contractor or his employees"). In contrast, a principal is generally vicariously liable for the negligence of his agent if they share a master-servant relationship. *See Gallagher's Estate v. Battle*, 122 A.2d 93, 97 (Md. 1956). An agent is a servant if he "is a person who is employed to perform . . . services for another . . . and who, in respect to his physical movements in the performance of the service, is subject to the other's control or right of control." *Danner v. Int'l Freight Sys. of Wash.*, 855 F. Supp. 2d 433, 455 (D. Md. 2012) (quoting *Globe Indem. Co. v. Victill Corp.*, 119 A.2d 423, 427 (Md. 1956)) (internal citations omitted). Otherwise, an agent is an independent contractor if he is generally "free to exercise his own judgment and discretion as to the means and assistants that he may think proper to employ about the work." *Deford v. State*, 30 Md. 179, 203 (1869); *see also* Restatement (Second) of Agency § 2(3) (1958). Thus, whether an agency relationship exists in the first place turns on whether Metro had the right to control Qatawneh. If so, this Court must determine whether the degree of control maintained by Metro transformed the relationship to that of a master and servant. "The existence of an agency relationship is a question of fact which must be submitted to the factfinder if any legally sufficient evidence tending to prove the agency is offered." *Faya v. Almaraz*, 620 A.2d 327, 339 (Md. 1993).

Here, there is not legally sufficient evidence before this Court to show that Qatawneh was acting as an agent, let alone a servant, of Metro. As mentioned above, Metro did not have any direct contact with Qatawneh. Metro hired Jordan Towing to deliver its purchased vehicles, and Jordan Towing exercised its discretion to determine the "means and assistants" to do the job by hiring Qatawneh. Metro never specified to Qatawneh anything about the job, including the time

5

that the car should be delivered to the dealership or the manner in which the car should be loaded on the towing truck. Even accepting as true Plaintiff and Jordan Towing's contentions that Metro instructed Jordan Towing to present paperwork at the security check and to arrive at the auction during business hours, that limited control did not circumscribe Qatawneh's (or Jordan Towing's) performance "to the extent that the details of his performance were precisely determined by" Metro. *Schramm v. Foster*, 341 F. Supp. 2d 536, 544 (D. Md. 2004). The finite control that was exercised over the Jordan Towing Defendants only allowed Jordan Towing to complete the job it was hired to do (*i.e.*, the delivery of the car to Metro's dealership in Pennsylvania). *See id.* at 546 (finding no agency relationship and granting summary judgment for defendant who contracted with trucking company because defendant did not have "any control whatsoever of the manner in which [the driver of the trucking company] conducted his work. [Defendant] did not have the power to fire [the driver] or to control his activities in transit. The only thing [defendant] had a right to control was the ultimate result—the delivery of the load to its final destination in New Jersey."). Metro hired Jordan Towing to transport its auction acquisitions to its Pennsylvania car dealership. If Jordan Towing did not go to the auction during business hours to collect the vehicles or did not present paperwork allowing it to drive Metro's car off the auction lot, it would be unable to complete that task. These commonsense instructions therefore did not control Jordan Towing's performance of the job, or any of Jordan Towing's decision making on the job site, but simply provided the items necessary for the job's completion. Moreover, Qatawneh admitted that he did not know Metro and that his instructions came directly from Mashaqbeh, who accompanied him to the auction.

In arguing that this case involves agency, Plaintiff and Jordan Towing cite cases that are factually distinguishable because the accidents occurred in the context of an uncontested

employer-employee relationship. In *Wood v. Walton*, 855 F. Supp. 2d 494 (D. Md. 2012), the court addressed whether an employee was acting within the scope of his employment when driving to his hotel from a bar while on a temporary work trip. Similarly, in *Dhanraj v. Potomac Elec. Power Co.*, 506 A.2d 224 (Md. 1986), the court addressed whether an employee was acting within the scope of employment while driving to a training facility at the employer's suggestion. In both cases, the defendants' agency (and master-servant) relationships were not disputed, but the sole question was whether the accident occurred in the scope of the employment. Here, however, Qatawneh's agency relationship with Metro is in dispute. Thus, the success of Plaintiff's claim against Metro is dependent on whether Plaintiff can prove that Qatawneh was acting as Metro's agent at the time of the accident. As described above, Plaintiff and Jordan Towing have offered no such evidence. Qatawneh answered only to Mashaqbeh regarding the performance of his work.

Thus, insufficient evidence exists to support the finding that Metro had adequate control over Qatawneh to establish an agency relationship at all. And even if an agency relationship were found to exist, given Metro's lack of participation in any of the events occurring at the auction venue, the relationship between Metro and Qatawneh would not be a master-servant relationship as required to confer vicarious liability.

## IV.  CONCLUSION

For the reasons stated above, Metro's Motion for Summary Judgment, ECF 27, will be GRANTED and judgment will be entered in Metro's favor. A separate Order follows.

Dated: June 26, 2023                                                                  /s/
                                                                         Stephanie A. Gallagher
                                                                         United States District Judge